**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Plaintiff/Respondent,** | ) | |
| | ) | **Criminal Case No. CR-17-70-RAW** |
| **v.** | ) | |
| | ) | **Civil Case No. CV-21-198-RAW** |
| **JUAN CARLOS CERVANTES-RAMIREZ,** | ) | |
| | ) | |
| **Defendant/Movant.** | ) | |

<u>**ORDER**</u>

Now before the court is the *pro se* motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence ("§ 2255 motion") filed by Defendant Juan Carlos Cervantes-Ramirez ("Defendant").[1]  [CR Doc. 56; CV Doc. 1].  The Government filed a brief in opposition to Defendant's § 2255 motion.  [CR Doc. 68].  Defendant did not file a reply.

On November 8, 2017, a grand jury returned an Indictment charging Defendant with one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A).  [CR Doc. 3].  Donn F. Baker entered his appearance as counsel of record on behalf of Defendant.  [CR Doc. 10].  On August 21, 2020, Defendant appeared with Mr. Baker and pleaded guilty without a plea agreement.  [CR Doc. 41].  A presentence investigation report ("PSR") was prepared by the probation office.  Based upon a total offense level of 35 and a criminal history category of II, his guideline imprisonment range was 188 months to 235 months.  [*PSR* at ¶ 53].  Neither party objected to the PSR.

---

[1]     Defendant also filed a motion to file addendum to Defendant's § 2255 motion.  [CR Doc. 64].  The motion to file addendum was unsigned.  *Id*. at 2.  The court entered a minute order directing Defendant to submit a signature page adopting the motion, or in the alternative, a signed amended motion, to the court no later than July 29, 2022.  [CR Doc. 65].  Defendant was advised that the unsigned motion would be stricken if a signature page adopting the motion, or a signed amended motion, was not timely filed.  *Id*.  Defendant did not file a signature page adopting the motion, or a signed amended motion, and the unsigned motion to file addendum to Defendant's § 2255 motion [CR Doc. 64] was stricken [CR Doc. 69].  *See* Fed. R. Civ. P. 11(a).  The court need not address the untimely new claims raised by Defendant (within the motion to file addendum to Defendant's § 2255 motion) in this order.

Rex Earl Starr entered an appearance on behalf of Defendant on November 23, 2020.[2] [CR Doc. 47]. Counsel filed a detailed sentencing memorandum prior to sentencing. [CR Doc. 49]. Counsel summarized the background of the case within the sentencing memorandum. *Id*. at 1. Referring to the DEA's Report of Investigation, counsel contended that Defendant on July 6, 2017, "bonded out of the Sequoyah County jail and was transferred to the Memphis DEA with the intention of making a controlled delivery of the methamphetamine." *Id*. He then asserted that "[a]t this point, and for whatever reason, [Defendant] seems to have fallen through the cracks of the justice system, only to surface again . . . in the Eastern District of Virginia."[3] *Id*. In summary, Mr. Starr argued that Defendant should have qualified for relief under the "Safety Valve" in his case in the Eastern District of Virginia, and thus his sentence received in Virginia was too long, and that the Eastern District of Oklahoma should run the sentence in the instant case concurrently with the Virginia sentence. *Id*. at 2-3.

The Government filed a response to the Defendant's sentencing memorandum, arguing that "[a] concurrent sentence would serve to create a sentencing disparity for those in similar circumstances and would not serve the factors set forth in Title 18, United States Code, Section 3553." [CR Doc. 50 at 4]. The Government disagreed with Defendant's presentation of the background of the instant case, alleging that Defendant had initially agreed to cooperate with law enforcement "in order to avoid immediate detention and then, consistent with his history of failing to appear, fled and continued his interstate criminal activity, later resulting in an Indictment in the Eastern District of Virginia." *Id*. at 1. According to the Government, "[a]fter initially being arrested for possessing 20.1 kilograms of methamphetamine in the Eastern District of Oklahoma in 2017, on May 15, 2019, Defendant was arrested after distributing 8.540 kilograms of Heroin and 3 kilograms of Cocaine." *Id*.

---

[2]     Mr. Baker, Defendant's counsel, departed this life on November 12, 2020. https://nafusa.org/2020/11/former-us-attorney-donn-f-baker-dies-71/ (last visited January 18, 2024).

[3]     Defendant pleaded guilty to conspiracy to distribute and possess with intent to distribute one kilogram or more of heroin (Count 1) in the United States District Court for the Eastern District of Virginia, Newport News Division, Case No. 4:19CR00047-005. [*PSR* at ¶ 27]. According to the PSR, "[D]efendant and 40 codefendants were part of a drug trafficking organization which transported narcotics between California and Tennessee, and Tennessee and Virginia." *Id*.

On February 2, 2021, Defendant was sentenced to a term of 200 months of imprisonment, to "run concurrently with the sentence imposed in Eastern District of Virginia case number CR-19-00047-005 imposed on 1/16/2020." [CR Doc. 52]. Judgment was entered on February 5, 2021. *Id*. During the sentencing hearing, the court advised Defendant that he had 14 days to appeal his sentence, and that Mr. Starr would remain his attorney during that time. [CR Doc. 61 at 15]. The following month, Defendant submitted a letter to the court. [CR Doc. 54]. In summary, Defendant requested the appointment of counsel to assist with filing an appeal. *Id*. The court construed the letter as a motion for appointment of counsel. [CR Doc. 55]. Noting that the time to appeal had passed, the court denied Defendant's motion as moot. *Id*.

Defendant asserts three grounds within his timely § 2255 motion. The Government filed a brief in opposition to the § 2255 motion, arguing that Defendant "has not established any entitlement to relief." [CR Doc. 68 at 10]. An affidavit provided by Mr. Starr, counsel for Defendant, is attached to the Government's response. [CR Doc. 68-1].

### **Ground One**

Defendant essentially argues in Ground One that he was entitled to be sentenced pursuant to the safety valve provision. This matter could have been raised on direct appeal. "A § 2255 motion is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citing *United States v. Warner*, 23 F.3d 287, 291 (10th Cir. 1994)). "When a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *Id.* Defendant has failed to establish cause and prejudice sufficient to overcome the procedural default rule. Moreover, Defendant has failed to demonstrate actual innocence, meaning he has failed to support a claim for miscarriage of justice. Still, Defendant's claims are based principally on allegations of ineffective assistance of counsel. Defendant's ineffective assistance claims are not procedurally barred and can be reviewed on the merits.

The Sixth Amendment gives criminal defendants the right to effective assistance of counsel, and claims of ineffective assistance of counsel are governed by the familiar two-part test

announced in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under the *Strickland v. Washington* standard, Defendant must demonstrate that (1) the representation was deficient because it fell below an objective standard of reasonableness under prevailing professional norms; and (2) the deficient performance prejudiced the defense. *Id.*, 466 U.S. at 687. Regarding the first prong, the *Strickland* Court provided the following guidance:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.

*Id.* at 689 (internal citation omitted). With respect to the second prong, the Supreme Court explained a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. This court "may address the performance and prejudice components in any order, but need not address both if [Defendant] fails to make a sufficient showing of one." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999). "Surmounting *Strickland's* high bar is never an easy task." *Padilla v. Kentucky*, 599 U.S. 356, 371 (2010). "*Strickland* does not guarantee perfect representation, only a reasonably competent attorney." *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (citations and internal quotation marks omitted).

Defendant claims his attorney "failed to object to the fact that [Defendant] did not receive a reduction in sentence from the 'Safety Valve' even though [he] met the criteria." [CR Doc. 56 at 4]. The argument lacks merit. Defendant's attorney correctly notes in his affidavit that Defendant "was not eligible for safety valve relief." [CR Doc. 68-1 at 2]. The Government reminds the court that "[t]here was much discussion regarding safety valve in [Defendant's] Eastern District of Virginia case; however, that has no bearing on the proceedings of the case before this Court." [CR Doc. 68 at 20]. Indeed, at the time of sentencing in the instant case, Defendant had a prior 3-point offense as determined under the sentencing guidelines (*see PSR* at ¶ 27), meaning he did not qualify under 18 U.S.C. § 3553(f)(1)(B). Nor has Defendant shown

that he cooperated with the Government prior to sentencing under 18 U.S.C. § 3553(f)(5).  In short, Defendant has not shown that he qualified for a safety valve reduction, and he offers *no facts* to support his conclusory claims.

Defendant also mentions, in passing, that Mr. Starr "only came to see [Defendant] one week prior to sentencing after [Defendant] wrote the court to inform the court that no one had come to see [him] to discuss [his] sentencing."  [CR Doc. 56 at 4].  Defendant provides no evidence or other statements supporting the assertion.  The nine-page sentencing memorandum [CR Doc. 49] referenced above was filed by counsel on January 26, 2021, which was one week prior to the sentencing hearing.  The court has also reviewed the sentencing hearing transcript. [CR Doc. 61].  Counsel informed the court that he had discussed the PSR with Defendant, and the transcript shows counsel was familiar with the case at hand (as well as the case in Virginia). *Id*. at 3, 6-9.  Defendant was given an opportunity to be heard and he addressed the court.  *Id*. at 9-11.  At no point during the sentencing hearing did Defendant express dissatisfaction with counsel's services.

Defendant has not established that his counsel's performance fell below an objective standard of reasonableness.  He has also failed to show that, but for counsel's alleged errors, the result of the proceeding would have been different.  His claims of ineffective assistance of counsel fail both prongs of the *Strickland* standard and must be denied.

### Ground Two

Defendant claims in Ground Two that counsel was ineffective for failing "to file a notice of appeal after being expressly notified to do so."  [CR Doc. 56 at 5].  Defendant alleges that "[o]n the date of [his] sentencing [he] wrote a letter to Mr. Star[r] to inform him to file a Notice of Appeal."  *Id*.  Counsel, according to the Defendant, "did not respond to [his] calls and never filed a Notice of Appeal as instructed."  *Id*.

As referenced above, Defendant sent a letter to the court seeking appointment of counsel to file a notice of appeal.  [CR Doc. 54].  The letter was submitted to the court more than one month after Defendant was sentenced.  The deadline for filing an appeal had already passed. Defendant claimed he had sent a letter to Mr. Starr on the day he was sentenced, that counsel

came to see him four days later on February 6th, and that Defendant "told [counsel] the reason why [he] wanted to appeal the sentence." *Id*. Defendant claimed he did not know if an appeal was filed, alleging counsel did not answer any of his calls or calls from his family since he had last seen counsel on February 6th. *Id*.

In response, the Government points to Supreme Court precedent, arguing that "an attorney's duty to file an appeal varies depending on the instructions, if any, he receives from his client." [CR Doc. 68 at 20]. The Government cites *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), explaining that "[o]n one end of the spectrum, 'a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable,'" and that "[c]onversely, 'a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently.'" *Id*. The Government also notes the following:

> Defendant has failed to attach or document any efforts he made to contact Mr. Starr during the 14-day period by phone, mail or message. Generally, courts will not consider conclusory allegations not substantiated with factual and legal support. It is Defendant's burden to "allege facts which, if prove[n], would entitle him to relief." *Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir.1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n. 1 (10th Cir.2001) (en banc). "[T]he allegations must be specific and particularized, not general or conclusory." *Id*. Likewise, courts will not "sift through the case's voluminous record to find support for the defendant's claims." *United States v. Apperson*, 441 F.3d 1162, 1204 (10th Cir. 2006) (citation omitted).

[CR Doc. 68 at 22]. The court agrees with the Government. Defendant's claims in Ground Two are not substantiated and, like his other claims referenced herein, are thoroughly implausible.

At sentencing, the court advised Defendant that he had 14 days to appeal his sentence. It was over a month later that Defendant sent a letter to the court seeking the appointment of an attorney to assist with an appeal, alleging he was unsure if Mr. Starr had filed his appeal. He now raises similar claims in his § 2255 motion. But, as noted by the Government, he has failed to attach or document any efforts that he made to contact his attorney during the 14-day period by phone, mail or message. Moreover, Defendant's claims are in direct contrast to Mr. Starr's sworn affidavit. Counsel unequivocally denies Defendant's claims as follows:

"[Defendant] alleges I failed to file a notice of appeal on his behalf. Following sentencing, [Defendant] did not ask me to file a notice of appeal. He told me specifically that he did not wish to appeal the Sentence. At no time in the 14 days following the imposition of [Defendant's] sentence did he request I file a notice of appeal."

[CR Doc. 68-1 at 2].

Defendant fails to show counsel was ineffective. Defendant's request for relief in Ground Two is denied.

### **Ground Three**

Defendant argues in Ground Three that counsel was ineffective for failing to object "when the Court did not allow [Defendant] allocution prior to sentencing." [CR Doc. 56 at 7]. Defendant claims he "was not allowed to address the court prior to [his] sentencing" and that he "wanted to tell the court about a few issues and [he] never got the chance." *Id*. Defendant contends that he "told [his] attorney about it," was told it was too late to speak, and that his attorney "never made any objection about [him] not being allowed to speak before being sentenced." *Id*.

The Government contends that Defendant's "claim is contradicted by the record and is without merit." [CR Doc. 68 at 23]. Again, the court agrees with the Government. The following dialogue took place at the sentencing hearing:

THE COURT: So, Mr. Cervantes-Ramirez, I am going to give you an opportunity to speak, but before I do that, I need to ask you about five questions. All right?

THE DEFENDANT: (NODDED HEAD)

THE COURT: And if you could speak into the microphone, that would be helpful.

THE DEFENDANT: Okay. Is this on?

THE COURT: Yes, if that's okay with everyone around you.

Okay. Now, as I understand it, you entered a guilty plea at a hearing held before the United States Magistrate Judge?

THE DEFENDANT: That's correct.

THE COURT: And at that time you consented to the magistrate judge holding that hearing and taking your plea?

THE DEFENDANT: Yes, sir.

THE COURT: And at that hearing you stated the facts concerning your actions, which met the essential elements for the crime to which you were pleading?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have any facts or circumstances changed since the time of your plea before the United States Magistrate Judge which would alter the validity of your guilty plea?

THE DEFENDANT: No, Your Honor.

THE COURT: Do you agree, Mr. Starr?

MR. STARR: Yes.

THE COURT: I find that your plea of guilty before the United States Magistrate Judge was consensual and supported by the factual record. I, therefore, affirm the finding of guilt and acceptance of your plea before the United States Magistrate Judge.

All right, Mr. Ramirez, as I told you, this is your opportunity to speak to the Court. Is there anything you would like to say?

THE DEFENDANT: Well, first of all, I want to say I am sorry to my family, to my kids, although they are not here. They are a long way. But I know what I did was wrong. There are just a lot of things that, you know, I could say that I want to say, but, you know, the fact is that I committed a crime and I have to pay for my -- the consequences of what I've done. I want to say I am sorry to all of the families that I caused damages, to all of the people out there that are using drugs that I've seen over the past few times that I've been here incarcerated. There are a lot of people that are addicted to all of these drugs and it is just sad seeing that, and I really feel sorry about that. It is more about the families that are going through it. And I know what I did was wrong, and I ask God every time to forgive me, but I already done what I did and I am just hoping to God that, you know, everything was (inaudible). Thank you.

THE COURT: All right. Thank you, sir.

*        *        *

8

THE COURT: Okay. Mr. Ramirez, you have 14 days to appeal your sentence, and Mr. Starr will remain your attorney during that time.

Any requests regarding place of incarceration?

THE DEFENDANT: I would like to see if I could go to the Memphis facility.

THE COURT: The Court will recommend that the Defendant be incarcerated at the Memphis facility.

THE DEFENDANT: I know that Covid has slowed down all of the transfers, but I would like to see if I could get moved there as soon as possible from this . . .

THE COURT: I will tell you, I can tell you that I can recommend that, sir, but they are going to do what they can do as soon as they can. Okay?

THE DEFENDANT: Thank you. I am just ready to get out of there.

THE COURT: Okay. Thank you.

Anything further, Mr. Burris?

MR. BURRIS: No, Your Honor. Thank you.

THE COURT: Mr. Starr?

MR. STARR: Nothing, Your Honor.

THE COURT: Mr. Ramirez?

THE DEFENDANT: Nothing else. Thank you.

THE COURT: You are remanded to the custody of the Marshal, sir.

THE DEFENDANT: Thank you.

[CR Doc. 61 at 9-11; 15-16].

Defendant's assertion that he "was not allowed to address the court prior to [his] sentencing" is patently false.  Furthermore, as noted by the Government, Defendant fails to identify which issues he wanted to tell the court about, and he "also neglects to detail how the unidentified issues would have changed the outcome of the proceedings or the sentence imposed

by this Court." [CR Doc. 68 at 24]. Defendant fails to show counsel was ineffective. Defendant's request for relief in Ground Three is denied.

A certificate of appealability may issue only if Defendant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). When a district court denies a § 2255 motion on procedural grounds without reaching the merits of a defendant's claims, a certificate of appealability should issue when a defendant "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court denies a § 2255 motion on the merits, a defendant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* Upon consideration, this court finds that the standard has not been satisfied. This court hereby declines to issue a certificate of appealability.

Defendant's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence [CR Doc. 56; CV Doc. 1] is hereby DENIED.[4] Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, this court hereby declines to issue a certificate of appealability.

It is so ordered this 19th day of January, 2024.

_____
THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA

---

[4]     The motion, files and records of this case conclusively show that Defendant is entitled to no relief. Thus, no evidentiary hearing was held.